THE STATE v. JAMES P. REILLY, JR.

Submitted July 1, 1915—Decided November 30, 1915.

1. The statute relating to the crime of bigamy, after defining the offence and fixing the penalty declares, in the same section, that nothing in that section should extend to any person in classes particularly described. *Held,* that in an indictment for bigamy, it was not necessary to aver that the defendant was not within either of the excepted classes.

2. To require that an indictment negative an exception contained in a criminal statute, the exception must be contained in the prohibitory clause as a part of the description of the crime, and the fact that the exception appears in the same section which defines the crime, does not change the rule if the clause follow the prohibitory clause and is distinct and substantive.

On error to the Union County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and BERGEN.

For the plaintiff in error, *William R. Wilson.*

For the defendant in error, *Alfred A. Stein,* prosecutor of the pleas.

The opinion of the court was delivered by

BERGEN, J. The defendant was convicted of bigamy. His first wife lived with him one week; they never saw each other for six years prior to his second marriage, and the defendant testified that he was told by her mother that she was dead before his second marriage. The defendant, having brought the record here, has assigned errors thereon, and also filed specifications of causes under sections 136 and 137 of our Criminal Procedure act.

The first point made is, that the indictment was defective and should have been quashed, a motion therefor having been made before the jury was sworn, and the same questions raised by a request to charge which was refused by the trial court and an exception thereto sealed. The defect alleged is, that the indictment does not aver that the defendant is not included in the class of persons which the statute exempts from its operation. The statute referred to is section 52 of the act entitled "An act for the punishment of crimes" (Revision of 1898). 2 *Comp. Stat., p.* 1743. This section declares "any person who having a husband or wife living, and marries another person, shall be guilty of bigamy, and punished by fine not exceeding one thousand dollars, or imprisonment at hard labor not exceeding ten years, or both; but nothing in this section contained shall extend to any person whose husband or wife shall be continually remaining within the United States of America for the space of five years together, or whose husband or wife shall absent himself or herself, the one from the other, for the space of five years to-

gether, in any parts within this state or the United States, the one of them not knowing the other to be living within that time, nor to any person who is or shall be at the time of said marriage divorced, by the judgment or decree of any authority or court having cognizance thereof; nor to any person where the former marriage has been or shall be by the judgment or decree of any such authority or court, declared to be void and of no effect." / The claim of the defendant is, that an indictment for bigamy must aver that the defendant is not within the class of persons to whom it is declared the part of the section defining the crime and fixing the penalty shall not extend. / It is well settled in this state that if there is an exception in the "enacting clause" of a statute upon which an indictment is founded, there must be an averment that the defendant is not within the excepted class, for in such case the exception is an essential part of the description of the offence. But the fact that the proviso or exception is in the same section of the act, does not make it necessary to notice it in pleading, unless it is also incorporated in the enacting clause, "for statutes are not divided into sections upon the rolls of parliament." *McGear et al.* v. *Woodruff*, 33 N. J. L. 213, in which Mr. Justice Depue quoted with approval from *Gould Pl.*, as follows: "In an action founded on a penal statute the subject of any exception in the enacting or prohibitory clause of the act must, in the declaration, be included by averment; but of any proviso or qualification in a separate substantive clause, the declaration need not take notice. In the first case, the exception is an essential part of the description of the offence or thing prohibited; in the latter, the proviso, &c., is only a distinct matter of defence." Any confusion which may exist in the cases dealing with this subject is, we think, due to the use of the expression, "enacting clause," when referring to the declaratory or prohibitory clause. Strictly speaking, the enacting part of a statute is that which declares its enactment and identifies it as an act of legislation, which is no part of the prohibitory or declaratory clause of the act. If the exception appear in the latter, it is an essential part of

the description of the thing prohibited, and must be negatived. The exception relied on in this case is not contained in the prohibitory clause of the act, but in a separate substantive clause which the pleader need not notice. / In *State* v. *Miller,* 24 *Conn.* 522, the statute provided, in section 1, that no person should manufacture or sell intoxicating liquor "except as hereinafter provided," and then followed in succeeding sections certain exceptions. The written complaint there under review, which was in the nature of an indictment, did not negative the exceptions. In disposing of this matter, Judge Ellsworth, speaking for the Supreme Court of Errors of Connecticut, said: "Now, the claim is that, by the reference in the first section, the subsequent exceptions are incorporated into the first section, and become a part of it as effectually as if they were recited *verbatim,* and that they must therefore be negatived, according to the well-settled rule of declaring that an exception, contained in the enacting clause of the statute, must be negatived by the prosecutor or the pleader. As to this general rule of law, we believe there is no doubt; but in the application of it, and especially in the language that has been used, quite loose and unguarded, as we think, there is great confusion and apparent inaccuracy even by those who understood the rule as we do. The rule, as everywhere laid down, is, that after words of general prohibition, whatever comes in by way of proviso or exception, need not be negatived by the pleader, but must be set up by the accused. In this view, it is immaterial whether the proviso, or exception, be contained in the enacting or subsequent sections, if it only follow a general prohibition. * * * It is of no importance in what section the proviso is placed. By 'clause,' in these cases, I understand, the words of prohibition; that sentence of the section, which at first describes and prohibits the general offence, though it is followed by exceptions, as in the statute in question." In *State* v. *Price,* 71 *N. J. L.* 249, 256, Mr. Justice Pitney said, speaking for this court: "It is well settled that an indictment for a statutory offence need not contain an averment that the defendant is not within an excepted clause, unless

the exception is found in the enacting or prohibition clause of the act. If it be found in a separate substantive clause, and is not an essential part of the description of the offence, it is a matter of defence." In construing this clause the word "enacting" must be read as synonymous with prohibitory, and not as identifying an act of legislation. In *Hale* v. *State* (*Supreme Court of Ohio*), 51 *N. E. Rep.* 154, the court said: "The test appears to be that, when an exception or proviso in a criminal statute is a part of the description of the offence, it must be negatived by an averment in the indictment, in order to fully state the offence, but where its effect is merely to take certain persons or acts out of the operation of the general prohibitory words of the statute, the negative averment is unnecessary." In the statute under consideration, that part of it which declares that the act shall not extend to a certain class of persons, is no part of the prohibitory clause, nor does it in any way describe the offence, it merely excludes a certain class of persons from subjection to a general prohibitory clause. If the state was required to aver that the parties to the first marriage had never been divorced, it would be bound to prove that no court having jurisdiction of either of the parties had ever made a decree divorcing them. The scope of such an inquiry would prevent a conviction in almost every case, when we consider that divorces are granted in nearly every state and country. We are quite satisfied that under the cases the exception must be contained in the prohibitory clause as a part of the description of the thing forbidden, and that if it does not appear there, the pleader is not bound to aver it. We are also of opinion that the fact that the exception appears in the same section of the act with the prohibitory clause, does not change the rule if the clause containing the exception is distinct and substantive, and that such a condition exists in the statute being considered. *Conner* v. *Fogg,* 75 *N. J. L.* 245.

The next point argued is, that it was error to permit the justice of the peace who performed the marriage ceremony between the defendant and his first wife to testify that he was a justice of the peace at the time, the contention being,

that he was bound to produce his "credentials." The question to which the exception on which this argument is based was: "*Q.* In what official capacity, if any, did you perform the ceremony between Ada Hobson and James P. Reilly, Jr.?" Proof that a party acted and exercised the office of justice of the peace is sufficient evidence that he is one, without producing his appointment, was settled in *Conover* v. *Solomon,* 20 *N. J. L.* 295, and therefore there is no merit in this objection.

The next point is, that in deciding this question, the trial court said: "If this man never occupied any official position he led those people to believe that he was an officer and he performed the ceremony and they subsequently cohabited, lived together as man and wife, and then subsequent to that time the defendant in this case married another woman during the life of the first woman whom he married, he would have been violating the law." The reason which the trial judge gives as a basis for his ruling is not error if the determination is a correct one. The reason above given was not an instruction to the jury, but only that of the court for the admission of the evidence which was properly admitted and therefore it is not necessary to now determine whether the statement was correct in law or not.

The third point argued is, that the judge did not properly define a reasonable doubt. What the court said was: "Now a reasonable doubt is not any doubt; it is a doubt which one entertains after he has considered all of the testimony pro and con; that is, all of the testimony for the defendant and against the defendant, and after considering it, and giving it all the attention and the weight to which it is entitled, then, if a reasonable doubt rests upon your minds, you are to give the benefit of that doubt to the defendant." This instruction must be read in connection with what the trial court said immediately preceding the matter challenged, which was, "that the jury ought to feel that the defendant is guilty beyond a reasonable doubt, and if a reasonable doubt exists in their minds, they should of course give the benefit of that doubt." Taking the entire charge on this point, we think there was no error.

The next point is, that it was error to refuse to charge as requested "that it was a question of fact for the jury whether the prisoner knew whether his first wife was alive." The court did charge that the state must prove affirmatively and beyond a reasonable doubt that the first wife was alive at the date of the void marriage "but under the statute, this defendant would be innocent of the crime of bigamy if he did not know that she was alive, and if it appears that he had not heard from her during the period of five years prior to his marriage to Abbie Miller," and subsequently charged, after reciting some of the evidence, "you are to decide whether this man has told a truthful story on the witness stand when he said to you he believed his wife was dead for the period of five years at the time when he married Miss Miller. You are to determine that." We think the request was fully charged, and that the question of fact whether the prisoner knew his first wife was alive, was fully submitted.

The next point is, that it was error to refuse to charge as requested "that the burden of proof that a person charged with bigamy has not been continually absent from his wife for five years, and that she was known to him to be living within that time, is on the state and not on the defendant." We think that this request was sufficiently complied with when the jury were instructed, as they were, that the state "must prove affirmatively and beyond a reasonable doubt that the first husband or wife was alive at the date of the marriage. This is not presumed as a matter of law, from proof that he or she was alive at a prior date, for the presumption that the accused was innocent will nullify the presumption of the continuance of life. Hence, in the absence of direct evidence that the earlier spouse is alive when the later marriage was solemnized, the jury must acquit." This charge taken in connection with what the court said on the same subject immediately following put upon the state the burden of proving affirmatively and beyond a reasonable doubt that the defendant had not been continually absent from his wife for five years and that she was known to him to be living within that time.

It is also urged, that there was error in permitting the state to ask of the justice who married the parties, "Is that Ada Hobson?" after the prosecutor had asked her to stand This, the defendant claimed, was not a legal identification. Why it was not, is not indicated in the brief, nor is the point argued, but we fail to see any error in asking a person to be identified to stand.

It is also argued that there was error in refusing to allow a witness to answer this question: "Did you have any conversation with Mrs. Hobson, the mother of Ada Hobson, in the city of Paterson after the marriage of Ada and James P. Reilly?" and also this question, "Did Mrs. Hobson, the mother of Ada Hobson, on any occasion when you saw her, state to you that her daughter Ada was dead?" These questions and two others of like nature were overruled, and we think properly so, because the testimony related to a conversation between the witness and Mrs. Hobson, the mother of Ada, not had in the presence of the defendant or of Ada, and such a conversation could not excuse the defendant. There was a motion in arrest of judgment which was denied, based upon the insufficiency of the indictment, the reasons urged being those considered and disposed of in the earlier part of this opinion. We have examined the other points raised and find no merit in them. The judgment will be affirmed.