STATE OF NEW JERSEY, PLAINTIFF, v. RALPH WILLIAMS, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. DAVID GORDY, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. RICHARD MC MANUS, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Atlantic County

Decided February 3, 1984.

*Rona Kaplan, Michael Schrieber and H. Parker Smith,* Assistant Prosecutors for State (*Joseph Fusco,* Atlantic County Prosecutor, attorney).

*Richard Rosenberg,* Assistant Deputy Public Defender for defendant Ralph Williams (*Robert J. Moran,* Public Defender, attorney).

*Nathan Davis,* Assistant Deputy Public Defender for defendant David Gordy (*Robert J. Moran,* Public Defender, attorney).

*Edward Goldstein,* Assistant Deputy Public Defender for defendant Richard McManus (*Robert J. Moran,* Public Defender, attorney).

PORRECA, J.S.C.

Defendants Ralph Williams, David Gordy and Richard McManus were charged in separate, unrelated incidents with violating

the former-felon possession statute, *N.J.S.A.* 2C:39–7, which provides:

> Any person, having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, or sexual assault, whether or not armed with or having in his possession any weapon enumerated in section 2C:39–1 r., or any person who has ever been committed for a mental disorder to any hospital, mental institution or sanitarium unless he possesses a certificate of a medical doctor or psychiatrist licensed to practice in New Jersey or other satisfactory proof that he is no longer suffering from a mental disorder which interferes with or handicaps him in the handling of a firearm, or any person who has been convicted for the unlawful use, possession or sale of a controlled dangerous substance as defined in article 2 of P.L.1970, c. 226 (C. 24:21–3 et seq.), who purchases, owns, possesses or controls any of the said weapons is guilty of a crime of the fourth degree.

## I.

On August 25, 1983, Ralph Williams, a convicted felon, was working as a supervisor of a crew for a painting company. In performing his duties, defendant uses a razor cutter to scrape paint and masking tape off surfaces. During his lunch break, defendant stood outside a restaurant conversing with an acquaintance. At the conclusion of the conversation, Atlantic City Police approached defendant and arrested him pursuant to an outstanding arrest warrant. A search incident to the arrest revealed a razor cutter that was protruding from defendant's pants pocket. At no time did the police observe defendant touch the object.

On August 1, 1983, David Gordy, a convicted felon, and others, were laying tile on the floor of Kimberly Toulson's kitchen. Defendant Gordy used a "banana knife", ten inches in length with a five inch blade, to mark and cut the tile. Before actually laying the tile, defendant would place the knife in his rear pants pocket to avoid misplacing it. Around 8:00 p.m. defendant and another man left Toulson's home to purchase some beer, intending to return to finish the job. Later that evening, Atlantic City detectives conducted a *Terry* pat down of defendant while he was walking in a high-crime area of the

city.[1] The detectives discovered the "banana knife" in defendant's rear pants pocket. Defendant did not touch the knife during the incident or possess it under circumstances of a suspicious nature.

For the past three years, defendant Richard McManus has been employed as a commercial fisherman. As a matter of habit, defendant carries around an eight inch folding knife that is a tool of his trade. On April 14, 1983, at 11:00 p.m., Atlantic City detectives conducted a *Terry* pat down of defendant and discovered the folding knife. Defendant was not observed touching it.

## II.

At issue in the three cases is the scope of the definition of "weapon", referred to in the former-felon possession statute, and defined in *N.J.S.A.* 2C:39–1 r., to wit:

"Weapon" means anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into a weapon; and (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cestus or similar leather bands studded with metal filings or razor blades imbedded in wood; and any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.

In *State v. Brown*, 185 *N.J.Super.* 489 (App.Div.1982), the court analyzed the legislative purpose behind *N.J.S.A.* 2C:39–7 and its predecessor statute *N.J.S.A.* 2A:151–8 in deciding whether the mere possession of a "boning knife" by a convicted felon was within the ambit of the statute.

Regarding the predecessor statute, in *State v. Middleton*, 143 *N.J.Super.* 18 (App.Div.1976), aff'd 75 *N.J.* 47 (1977), the court observed:

---

[1]While this is not a motion to suppress evidence, the court recognizes that the detectives' conduct violated defendant's Fourth Amendment right against unreasonable searches and seizures.

... It is obvious that one of the evils sought to be suppressed by the statute was the possibility of any show of force, real or apparent, by one who had already been proven a felon. [143 *N.J.Super.* at 23, as cited in *State v. Brown, supra,* 185 *N.J.Super.* at 493.]

Also in regard to the predecessor statute, the court in *State v. Harper,* 153 *N.J.Super.* 86 (App.Div.1977), noted:

The obvious legislative intent of *N.J.S.A.* 2A:151–8 was to deter those previously convicted of serious crimes from possessing dangerous weapons. [153 *N.J.Super.* at 89, as cited in *State v. Brown, supra,* 185 *N.J.Super.* at 493.]

In *State v. Brown, supra,* the defendant urged that *N.J.S.A.* 2C:39–7 required for a conviction thereunder, proof, not only that the boning knife was in the possession of a convicted felon, but beyond this, that his purpose in possessing it was "its use as a weapon". 185 *N.J.Super.* at 493. The court, in rejecting defendant's contention, stated that this construction of the statute:

... would render the statute, a crime of the fourth degree, meaningless and useless, since the resulting offense would then clearly fall within the ambit of *N.J.S.A.* 2C:39–4d, a crime of the third degree.

*N.J.S.A.* 2C:39–4d proscribes the possession of any weapon, except a firearm, with a purpose to use it unlawfully against the person or property of another.

Relying on the proposition that there is a presumption against useless legislation, *Lanning v. Hudson Cty. Ct. of Common Pleas,* 127 *N.J.L.* 10, 16 (Sup.Ct.1941), aff'd 127 *N.J.L.* 604, 605 (E. & A.1942), the *Brown* court held that to support a conviction under *N.J.S.A.* 2C:39–7, all that is necessary is proof, beyond a reasonable doubt, of mere possession by the convicted felon of one of the weapons enumerated in *N.J.S.A.* 2C:39–1 r. *State v. Brown, supra,* 185 *N.J.Super.* at 493.

### III.

In each of the three trials, the prosecutor urged the court to apply the interpretation given the former-felon possession statute by the Appellate Division on *State v. Brown, supra.*

 It is well settled that principles of *stare decisis* prohibit trial judges from disobeying pronouncements of appellate courts. *Reinauer Realty Corp. v. Paramus*, 34 *N.J.* 406, 415 (1961). However, where the constitutionality of a statute is in issue and, in the former opinion, the validity of the act was assumed and not considered and determined, the former opinion is without force as precedent. *Virtue v. Freeholders of Essex*, 67 *N.J.L.* 139, 145 (Sup.Ct.1901).

 This court, in this particular situation, is not constrained to follow the Appellate Division holding in *Brown*. In that case the validity of the former-felon possession statute was never considered. In proscribing the possession, without more, of a weapon as defined in *N.J.S.A.* 2C:39-1r, the former-felon possession statute is unconstitutionally overbroad.

The concept of overbreadth was finely articulated in *Landry v. Daley*, 280 *F.Supp.* 938, 951–952 (N.D.Ill.), app. dism. 393 *U.S.* 220, 89 *S.Ct.* 455, 21 *L.Ed.2d* 392 (1968), rev'd on other grounds, sub nom. *Boyle v. Landry*, 401 *U.S.* 77, 91 *S.Ct.* 758, 27 *L.Ed.2d* 696 (1971). There Judge Will stated:

> The concept of overbreadth, on the other hand, rests on principles of substantive due process which forbid the prohibition of certain individual freedoms. The primary issue is not reasonable notice or adequate standards, although these issues may be involved. Rather the issue is whether the language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the Constitution. Frequently, the resolution of this issue depends upon whether the statute permits police and other officials to wield unlimited discretionary powers in its enforcement. If the scope of the power permitted these officials is so broad that the exercise of constitutionally protected conduct depends on their own subjective views as to the propriety of the conduct, the statute is unconstitutional.

Among the factors to consider in assessing whether a statute could pass constitutional muster are:

> (1) whether a substantial interest worthy of protection is identified or apparent from the language of the statute; (2) whether the terms of the regulation are susceptible to objective measurement by men of common intelligence; (3) whether those charged with its enforcement are vested only with limited discretion. *Id.*, 280 *F.Supp.* at 952–953. Accord, *State v. Profaci*, 56 *N.J.* 346, 350–351 (1970); *State v. Lashinsky*, 81 *N.J.* 1, 16 (1979).

The former-felon possession statute states that a convicted felon (or mental patient) may not purchase, own, possess or control a "weapon", i.e. anything readily capable of lethal use or of inflicting serious bodily injury. *See N.J.S.A.* 2C:39–1r. The statute then proceeds to list per se weapons, e.g. firearms, daggers, dirks, other dangerous knives, etc. In the instant cases, the convicted felons' possession of a razor cutter, banana knife and folding knife clearly fall within the broad definition of "weapon"; however, they do not fall within the list of per se weapons.

The language of the statute, given its normal meaning, poses the following questions:

(1) Can a convicted felon be employed as a busboy and clear a table including knives and forks?

(2) Can a convicted felon cut firewood which requires use of an axe or chain saw?

(3) Can a convicted felon take his son fishing which routinely calls for possession and use of a knife?

(4) Can a convicted felon play baseball in view of the potential of the bat being capable of lethal use or of inflicting serious bodily injury?

The court submits that the convicted felon cannot conduct an endless list of lawful activities without running the risk of being charged by some zealous police officer under this statute. The constitutional vice of so broad a proposition needs no further illustration; the statute virtually precludes these persons from possession of many physical objects that are designed for lawful purposes, but may, if improperly used, be classified as a weapon. *See State in the Interest of T.E.T.,* 184 *N.J.Super.* 324, 329 (App.Div.1982).

[5] Therefore, in prohibiting the possession of non-per se weapons without a consideration of exculpatory circumstances, including the purpose of possession of the weapon and the

circumstances under which it was possessed, the former-felon possession statute is unconstitutionally overbroad.

Accordingly, this court finds that the state has failed to prove beyond a reasonable doubt that the circumstances did not demonstrate that defendants herein possessed these non-per se weapons for any lawful use they may have. *Cf. State v. Wright,* 187 *N.J.Super.* 160 (App.Div.1982), certif. granted, 93 *N.J.* 259 (1983).

The clerk will enter verdicts of not guilty in each case.